UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE CO., ) | |
| ) | |
| Plaintiff, ) | 3:05-cv-00060 JWS |
| ) | |
| vs. ) | ORDER FROM CHAMBERS |
| ) | |
| CAROLINE PROSSER, ) | [Re: Motions at dockets 16 and 17] |
| ) | |
| Defendant. ) | |
| ) | |

## I.  MOTION PRESENTED

Plaintiff Allstate Insurance Company ("Allstate") issued two insurance policies providing coverage to defendant Caroline Prosser ("Prosser"), an Automobile Insurance Policy ("Auto Policy") and a Personal Umbrella Policy ("Umbrella Policy").  At docket 16, Prosser moves for summary judgment on issues relating to the insurance policies.  Her motion asks the court to declare that the "escape clause" in the Auto Policy's arbitration provision is invalid under Alaska Law, to declare that the uninsured motorist coverage available under the Umbrella Policy applies to injuries she sustained on May 18, 2001, and to order Allstate to arbitrate the amount due Prosser pursuant to the Umbrella Policy.  Recognizing that the court might decline to declare the escape clause invalid, Prosser seeks as alternative relief a declaration that the Umbrella Policy's $1,000,000 coverage is applicable to all the injuries she suffered on May 18, 2001, with the amount to be paid left for determination in further proceedings before this court.

At docket 17 Allstate cross-moves for summary judgment asking the court to determine that the Umbrella Policy does not provide coverage for any of the injuries suffered by Prosser.  In the event that the court holds otherwise, Allstate asks the court to find that the dispute is not subject to arbitration.

Oral argument was heard on February 14, 2006.

## II.  BACKGROUND

What happened to Caroline Prosser on May 18, 2001, was described at her deposition.  Relevant undisputed facts are summarized briefly here.  As Prosser was preparing to get into her GMC Yukon in the J. C. Penney Parking garage in Anchorage, a male and two females surrounded her, threatened her with a gun, and demanded her keys and her purse.  Although she relinquished the keys and told them to take her purse from the car seat, the criminals told her to get into the vehicle.  When she refused, one or both of the females struck Prosser, and the male, who had been pointing the gun at her, then struck her on the head with the butt of the gun.  Prosser testified: "The force of the hit made me fall into the back [seat] which I was trying not to do.  I was trying not to get in the car.  It made me fall into the car."[1]  At that point, the two females got into the back seat of the car with Prosser, and the male got into the driver's seat.  Before they exited the garage, one of the females moved to the front passenger seat and aimed the gun at Prosser.

The male drove the Yukon around Anchorage, and the abductors repeatedly threatened Prosser that they would shoot her if she screamed or attempted to attract attention.  After retrieving her driver's license from her purse one of the females told her they knew where she lived.  Prosser feigned illness to no avail in hopes of getting out of the car.  As the Yukon proceeded West on Northern Lights Boulevard beyond its intersection with Minnesota drive, the male responded to a female who asked where they would let Prosser out, that they were going to the Point (Point Woronzof is an uninhabited area at the West end of Northern Lights Boulevard), and that Prosser had seen their faces.  Prosser concluded that her abductors would kill her when they reached Point Woronzof.  Realizing she must escape while the vehicle was still traversing an inhabited stretch of road, Prosser planned to jump from the Yukon at a red light, but the lights were green.  Employing a ruse that she was sick and needed to

---

[1]Prosser Deposition at p 31, copy attached to doc. 16.

throw up, Prosser was able to use a plastic bag to shield the movement of one hand toward the door lock as she bent over the bag.  Once she had unlocked the door, she opened it and sprang from the moving vehicle.  She hit her head three times, and wound up with her head in the grass on the roadside.[2]

Prosser is a named insured in two Allstate Insurance policies in effect on the date of the incident.  The first was the Auto Policy covering the Yukon.  It had uninsured motorist ("UM") coverage of $100,000 per person and $300,000 per accident.[3]  The second was the Umbrella Policy which provided excess liability coverage of one million dollars.[4]

Allstate initially denied that the UM coverage in the Auto Policy applied to the incident on May 18, 2001, but ultimately paid the per-person policy limit of $100,000 plus interest and attorney's fees to Prosser.[5]  Prosser sought additional compensation under the Umbrella Policy.  Allstate filed the present declaratory judgment action, seeking a determination that the Umbrella Policy does not provide coverage.  This court has jurisdiction pursuant to 28 U.S.C. § 1332.

### III.  SUMMARY JUDGMENT  STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine dispute as to material facts and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to material fact.[6]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to

---

[2]Although not discussed in the deposition, the record indicates that Prosser's abductors later wrecked the Yukon, were arrested, and eventually convicted.

[3]Doc. 16, Exhibit A.

[4]Doc. 16, Exhibit B.

[5]Doc. 16 at 8.

[6]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

material fact.[7] Once the moving party has met this burden, the non-moving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[8] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[9] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[10]

## IV.  DISCUSSION

### A.  Right to Arbitration and Validity of "Escape Clause"

Prosser argues that she is entitled to arbitrate both coverage under the Umbrella Policy and the amount of her damages. Allstate argues that Prosser's claims are not subject to arbitration, because there is no arbitration clause in the Umbrella Policy. Of course, Prosser cannot deny the fact that there is no arbitration clause in the Umbrella Policy, but she reasons that the relationship between the two policies, and the fact that the Umbrella Policy provides excess insurance in the event of a UM claim, mean the Umbrella Policy should be construed together with the Auto Policy to include the arbitration clause from the Auto Policy.

Prosser requested arbitration under the Auto Policy of her right to UM coverage and the amount of her damages, but rather than submit to arbitration, Allstate paid the Auto Policy's $100,000 policy limit. Prosser complains that Allstate circumvented the agreement to arbitrate by paying the policy limit to avoid paying a much larger arbitration award under the Umbrella Policy. Allstate maintains that even if the claim

---

[7] *Id.*, 477 U.S. at 323-325.

[8] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[9] *Id.,* 477 U.S. at 255.

[10] *Id.,* 477. U.S. at 248-9.

under the Auto Policy had proceeded to arbitration, litigation of Prosser's claim under the Umbrella Policy would have been necessary.

Further complicating matters, Prosser requests that before ordering arbitration, this court declare a portion of the arbitration provision in the Auto Policy invalid, specifically the escape clause, which provides that an arbitration award below "the limits of the Financial Responsibility law of Alaska," is binding, but that when an award exceeds such limits, either party has the right to trial on all issues in a court of competent jurisdiction. Prosser argues the escape clause is invalid because it is unconscionable and against Alaska public policy.

The two insurance contracts include UM coverage, one explicitly and the other by operation of law,[11] but only one of them has an arbitration clause. The contracts' subject matter overlaps, but it is not co-extensive. For example, some risks insured by the Umbrella policy are not risks insured by the Auto Policy. Prosser cites no authority which holds that a court can import a provision from one contract into another contract merely because they include some overlapping subject matter. The court is not aware of any authority authorizing it to insert an arbitration provision into a contract which contains none. It seems particularly inappropriate to take an arbitration provision from one contract and insert it into a second contract when, to make the provision effective in the second contract, the court first has to rewrite the provision in the first contract. Finally, it must be noted that the arbitration provision reflects an agreement to arbitrate a dispute involving at most $100,000 per person, not ten times that amount, which is the Umbrella Policy's limit. It simply cannot be ascertained whether either party would have given up its access to the courts and agreed to arbitrate such a large dispute. In fact, inclusion of the escape clause shows that Allstate would never have agreed to arbitrate a million dollar dispute.

---

[11]The Auto Policy expressly includes such coverage. The Umbrella Policy does not, but the coverage is available by operation of Alaska law.

The court concludes that Prosser has no right to arbitrate a claim under the Umbrella Policy. This conclusion renders it unnecessary to determine the validity of the escape clause.

### B. Coverage Issues

Allstate acknowledges that under *Holderness v. State Farm*,[12] an umbrella liability policy is deemed to be an automobile liability policy and as such it includes UM coverage.[13] Allstate concedes that the vehicle involved in this incident was an uninsured vehicle, because it was driven by someone without insurance and without the owner's consent.[14] The issue framed by the briefing is the extent to which the Umbrella Policy's UM coverage applies in the circumstances presented. At oral argument, Allstate added an additional argument, asserting that those of Prosser's injuries incurred when she jumped from the vehicle were not accidental–she intended to jump– and so the injuries incurred when she exited the vehicle are not covered. The court will turn first to that argument.

#### 1. Accident

The Auto Policy's UM coverage obligates Allstate to pay for bodily injury which is "caused by accident." The Auto Policy does not define "accident." The Umbrella Policy does not expressly include UM coverage. With respect to the coverage expressly included, the Umbrella Policy provides coverage for bodily injuries arising from an "occurrence." The Umbrella Policy defines "occurrence" to be an accident which happens during the policy period. In *Shaw v. State Farm Mut. Auto Ins. Co.*,[15] the Alaska Supreme Court explained that when a disputed term is not defined in the

---

[12] 24 P.3d 1235 (Alaska 2001).

[13] Doc. 1 at ¶ 10.

[14] Doc. 20 at 6-7, fn. 3.

[15] 19 F. 3d 588 (Alaska 2001).

insurance policy, a court should examine the case law which interprets that term.[16] Alaska case law has defined an accident as "'anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected.'"[17] Under Alaska law, to determine whether an event is an accident, the court should consider the event from the perspective of the insured.[18]

The series of events which affected Prosser on May 18, 2001, cannot be considered separately and in isolation. From her perspective, and using the definition adopted by the Alaska Supreme Court, everything that happened from the time she was surrounded by her kidnappers was entirely unforeseen and unexpected. It is true that she intended to jump out of the Yukon, but is equally true that the last time she was actually in a position to make a decision not effectively dictated by her abductors was before she was forced into the car. When she was actually free to make her own decisions in the parking garage, she could neither foresee nor expect to have to jump from her own car to avoid being killed. Under Alaska law, the injuries Prosser suffered when she leapt from the Yukon were the result of an accident.

### 2. Availability of Coverage

Prosser argues that the UM coverage under the Umbrella Policy applies in this case, and that it should have limits equal to the limits purchased ($1 million). Allstate does not dispute the limits which might apply, but does maintain that Prosser's injuries "did not arise out of 'the ownership, maintenance or use' of an uninsured motor vehicle. Rather, Prosser was assaulted and beaten in a parking garage, then kidnaped and held

---

[16] *Id.,* 19 P.3d at 590.

[17] *Fejes v. Alaska Insurance Co.*, 984 P.2d 519, 523, quoting *INA Life Ins. Co. V. Brundin*, 533 P.2d 236, 242 n. 23 (Alaska 1975).

[18] *Shaw,* 19 P.3d at 590.

in her car until she escaped. . . . As a matter of law, Prosser's claims are not within the UM coverage deemed to be provided under the [Umbrella Policy]."[19]

Allstate relies on cases from other jurisdictions. Among them is *Edwards v. State Farm*.[20] There, the Minnesota Court of Appeals concluded that the victim's UM coverage did not apply where the victim was kidnaped, raped, and murdered in her assailant's vehicle, noting that "coverage exists only for injuries resulting from the use of a motor vehicle for transportation purposes" and concluding that there was not a sufficient connection between the use of the vehicle for transportation and the injuries sustained.[21]

In *State Farm v. Rosenberg*,[22] the victim had just gotten out of her vehicle in a parking lot when she was accosted by a man with a gun. The assailant ordered her into the passenger seat of her car, and drove away. As he was driving, he shot the victim and pushed her out of the car onto the highway.[23] The Illinois Court of Appeals concluded that UM coverage did not apply, rejecting the argument that the victim's injuries arose from the assailant's operation or use of her car, and finding that the "instrumentality" of her injuries was a hand gun, not the uninsured vehicle.[24]

In *State Farm v. Kastner*,[25] the Colorado Supreme Court rejected all arguments that the victim's injuries (rape at knife point) resulted from the use of her vehicle, despite Kastner's arguments that the assailant used the reclining passenger seat to prevent her

---

[19]Doc. 17 at 8.

[20]399 N.W.2d 95 (Minn.App. 1986, rev. den. 1987).

[21]*Id.,* 399 N.W.2d at 98.

[22]746 N.E.2d 35 (Ill.App. 2001).

[23]*Id.,* 746 N.E.2d at 36.

[24]*Id.*, 746 N.E.2d at 40.

[25]77 P.3d 1256 (Colo. 2003).

from signaling for help, that he used the vehicle to get to an isolated area to commit a crime, and that he used the automatic seat belts as restraints.[26]

In *Shaw v. State Farm Mut. Auto Ins. Co., the* Alaska Supreme Court recognized that the availability of UM coverage depends on the facts of each particular case.[27] However, there are legal principles to consider.  For example, as the Alaska court recognized in its earlier decision in *Criterion Ins. Co. v. Velthouse*,[28] coverage exists only where a vehicle is more than incidental to or the mere site of an injury.  This court reads *Shaw* and *Velthouse* (and cases from other jurisdictions discussed therein with approval) to establish three factors which a court should consider when deciding whether, in the facts of a particular case, an injury arises from the "use" of a vehicle which is sufficient to implicate insurance coverage.  They are the following:

    1)  The extent to which the automobile is a cause of the injury--while strict proximate cause is not required, the vehicle must be an "active accessory" in causing the injury;

    2)  Whether there was an act of independent significance which breaks the causal connection between "use" of the vehicle and the injuries suffered; and

    3) Whether the injuries arise from use of the vehicle for transportation purposes.

Allstate asserts that the case at bar is akin to *Edwards, Rosenberg,* and *Kastner,* in that Ms. Prosser "was the victim of a violent crime which, while it occurred in and around a motor vehicle, did not arise from the use of that vehicle as 'use' is interpreted under the three-part test enunciated in *Shaw v. State Farm.*"[29]  Allstate argues that

---

[26]*Id.*, 77 P.3d at 1265.

[27]19 P.3d 588, 592 (Alaska 2001) quoting with approval from *Continental Western Ins. Co. v. Klug*, 415 N.W.2d 876, 877-8 (Minn. 1987).

[28]751 P.2d 1, 5 (Alaska 1986).

[29]Doc. 17 at 16.

1) there is an insufficient level of causation between Prosser's car and her injuries; 2) the criminal conduct of the assailants was "an act of independent significance" that broke any causal link between the vehicle and the injuries; and 3) Prosser's injuries did not result from the use of her car for transportation purposes.  Allstate argues that under *Kastner*, "the fact that crimes occur in a vehicle, even when the vehicle is used to transport a victim, does not lead to the conclusion that victim's injuries arose from the use of the vehicle for transportation purposes."[30]  Noting that "under AS 28.20.440(b)(3), UM coverage applies only to injuries 'arising out of the ownership, maintenance or use' of an uninsured motor vehicle,"[31] Allstate contends that Prosser's injuries were inflicted by the criminals who abducted her and did not arise from the use of her vehicle, so there is no UM coverage under the Umbrella Policy.

      Allstate's arguments clearly carry the day with respect to injuries sustained prior to the time Prosser was forced into the automobile.  An assault in a parking garage, even if it occurs adjacent to a person's automobile, simply does not involve the use of the automobile as an "active accessory" nor does it involve use of the automobile for transportation purposes.  Under Alaska law there is no coverage for these injuries.

      Allstate does not fare so well with respect to the injuries sustained when Prosser jumped out of the vehicle.  With regard to those injuries, her case is distinguishable from the cases relied on by Allstate.  In those cases, UM coverage was denied because the motor vehicle was merely the site of a crime, and there was no movement of the vehicle causally connected to the injury.  In *Edwards,* the rape occurred in a *parked* car.  In *Rosenberg*, the victim's injuries were from a gunshot.  In *Kastner,* coverage was denied because use of the vehicle as a situs for rape was not "use" in a manner reasonably foreseeable at the time the parties contracted for insurance, and the sexual assault had an insufficient causal nexus with the use of the vehicle for transporting.

---

[30]Doc. 17 at 17.

[31]*Id.*

More importantly, application of Alaska law leads to the conclusion that those of Prosser's injuries attributable to exiting the vehicle are within the UM coverage in the Umbrella Policy. The first *Shaw/Velthouse* factor requires consideration of the extent of the causal connection between the Yukon and the injuries; coverage requires that the vehicle was an 'active accessory' in causing the injury. Here, the vehicle was an active accessory. Had the criminals not been actively using the Yukon, Prosser could not have received the injuries under discussion. Concerning the second factor, the criminal conduct of the abductors was not an "act of independent significance" that broke the causal link between the moving vehicle and the injuries sustained when Prosser exited the vehicle. An analogy shows why: Suppose that a thief stole a car, and rushing to get somewhere sped down a very narrow road forcing an oncoming motorist to incur bodily injury as she crashed her car into a roadside ditch to avoid being killed in a head-on collision. It is true that, but for the act of theft, the uninsured vehicle would not have forced the injured motorist off the road, but it is inconceivable that the law would treat the theft as an intervening act eliminating the injured motorist's own UM coverage. So, too, here. The assault and abduction do not intervene to eliminate Ms. Prosser's UM coverage for injuries sustained when she jumped from the moving vehicle to avoid being killed. The third factor also implicates the insurance coverage. The Yukon was being used to transport Prosser at the time she was injured.

A final question is whether there is UM coverage for the injuries Prosser sustained while she was confined within the automobile and exposed to threats which doubtless caused her to suffer great mental anxiety.[32] The first inquiry is whether the vehicle was "an active accessory" in causing the injury. Precisely what the Alaska court would include in that term is not clear, but it is clear that when a vehicle is merely the location of the injury it is not an active accessory. That is the situation respecting the mental anxiety experienced in the automobile. The anxiety caused by captivity and

---

[32]The Umbrella Policy defines bodily injury to include "shock, mental anguish or mental injury." Doc. 16, Ex. B.

threats of bodily harm could as easily have occurred elsewhere.[33] The second factor also weighs against coverage for the mental anxiety experienced inside the car, because the criminal acts were acts of independent significance breaking the necessary causal connection to the motor vehicle. It was quite literally the acts and threats of the criminals which caused the anxiety. Without them no anxiety would have been experienced, just as no injury would have been suffered in *Velhouse* absent the discharge of the shotgun. The third factor provides some support for coverage, because the Yukon was being used to transport Prosser at the time she experienced the anxiety. On balance, the factors which Alaska law direct this court to consider establish that there is no coverage for the mental anxiety suffered while Prosser was in the Yukon.

## V.  CONCLUSION

For the reasons above, the motions at dockets 16 and 17 are each **GRANTED in part and DENIED in part** as follows:

1. Prosser is not entitled to arbitrate claims under the Umbrella Policy.
2. The UM coverage in the Umbrella Policy applies to the bodily injuries sustained when Prosser jumped from the motor vehicle on May 18, 2001.
3. The UM coverage in the Umbrella Policy does not apply to the other bodily injuries suffered by Prosser on May 18, 2001.

DATED at Anchorage, Alaska this 24th day of February 2006.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[33] *See, Velthouse* at 751 P.2d 5.