UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| ALLSTATE INSURANCE CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> CAROLINE PROSSER, ) <br> ) <br> Defendant. ) <br> ) | 3:05-cv-00060 JWS <br><br> ORDER FROM CHAMBERS <br><br> [Re:   Dockets 43 and 48] |

## I.  MOTION PRESENTED

At docket 43, plaintiff Allstate Insurance Company ("Allstate") moves for summary judgment on the claim for punitive damages pled by defendant Caroline Prosser ("Prosser").  At docket 48, Prosser cross-moves for summary judgment on that issue.  The motions have been fully briefed.  Argument was heard on April 20, 2007.

## II.  BACKGROUND

In an earlier order, the court described the background to this lawsuit in some detail.[1]  A shorter summary follows here.  On May 18, 2001, Prosser was getting into her parked vehicle in J. C. Penney's parking garage.  A man and two women surrounded her, threatened her, demanded her car keys and purse, and then told her to get into the vehicle.  When Prosser refused, the women struck her, and the man hit her on the head with the butt of his gun so hard she fell into the vehicle.  The man then

---

[1]Docket 29.

drove Prosser's vehicle out of the garage with Prosser and one female assailant in the back seat and the other female in front training the gun on Prosser.

As they drove around Anchorage, the kidnappers threatened to shoot Prosser if she tried to attract attention. While traveling West on Northern Lights Boulevard, the driver told the others that they would go to Point Woronzof, an uninhabited area at the West end of Northern Lights Boulevard. He commented that Prosser had seen their faces. Concluding that her abductors would kill her at Point Woronzof, Prosser decided to jump from the car. She opened the door and leapt from the moving vehicle, hitting her head, and coming to rest on the side of the road.

When she was abducted, Prosser was a named insured on two Allstate Insurance policies, an Auto Policy for her car which included uninsured motorist ("UM") coverage of $100,000 per person and $300,000 per accident and an Umbrella Policy which provided $1,000,000 of excess liability coverage. Allstate initially denied coverage under the Auto Policy, but eventually paid Prosser the per-person UM limit of $100,000 plus interest and attorney's fees. Allstate filed this declaratory judgment action, seeking a determination that the Umbrella Policy does not provide coverage.

In connection with earlier motion practice, Allstate argued there was no coverage, because Prosser's injuries were not "caused by accident." The court disagreed:

> The series of events which affected Prosser on May 18, 2001, cannot be considered separately and in isolation. From her perspective, and using the definition adopted by the Alaska Supreme Court, everything that happened from the time she was surrounded by her kidnappers was entirely unforeseen and unexpected. It is true that she intended to jump out of the Yukon, but is equally true that the last time she was actually in a position to make a decision not effectively dictated by her abductors was before she was forced into the car. When she was actually free to make her own decisions in the parking garage, she could neither foresee nor expect to have to jump from her own car to avoid being killed. Under

Alaska law, the injuries Prosser suffered when she leapt from the Yukon were the result of an accident.[2]

Allstate also attempted to avoid coverage by arguing that Prosser's injuries did not result from the "ownership, maintenance or use" of Prosser's car. The court found the argument to have merit with respect to certain of Prosser's injuries resulting from the assault and battery in the parking garage and emotional harm from threats made while the car was moving about the city. The court rejected the argument with respect to injuries suffered when exiting the moving vehicle.[3]

### III. SUMMARY JUDGMENT STANDARD

Federal Rules of Civil Procedure 56(f) provides that summary judgment should be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to show that there is no genuine dispute as to any material fact.[4] The moving party need not present evidence; it need only point out the lack of any genuine dispute as to material fact.[5] If the moving party carries its burden, then the non-moving party must set forth evidence of specific facts showing the existence of a genuine dispute for trial.[6] All evidence presented by the non-movant must be believed for purposes of summary judgment and all justifiable inferences must be drawn in favor of the non-movant.[7] However, the non-moving party may not rest upon mere allegations or denials, but must

---

[2] *Id.* at p. 7.

[3] *Id.* at pp. 7-12.

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[5] *Id.* at 323-325.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

[7] *Id.* U.S. at 255.

show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[8]

### IV.  DISCUSSION

Prosser concedes there is no coverage for punitive damages under the Umbrella Policy,[9] but argues that she is entitled to recover punitive damages under the Auto Policy.  If so, the practical consequence is that any award of punitive damages would be paid under the Auto Policy, thus shifting any portion of an award of compensatory damages which would yield total compensatory and punitive damages in excess of $100,000 to the Umbrella Policy.

Prosser argues convincingly that under Alaska law the Auto Policy includes coverage for punitive damages.[10]  Allstate does not respond to this argument,[11] and the court finds that it has merit.[12]  Similarly, Allstate does not dispute the obvious proposition that the kidnappers' conduct which caused Prosser to jump from a moving vehicle to avoid being murdered at Point Woronzof would support an award of punitive damages.[13]  Rather, Allstate contends that punitive damages may not be awarded, because this court's earlier order held that Prosser could not recover compensatory damages for the assault and battery in the parking garage and mental distress endured during the journey around the city because these were the result of the independent

---

[8] *Id.* at 248-9.

[9] Doc. 47 at p. 5.

[10] Doc. 47 at pp. 5-6.

[11] Doc. 53.

[12] *State Farm Mut. Auto. Ins. Co. v. Lawrence*, 26 P.3d 1074, 1079 (Alaska 2001).

[13] Doc. 53 at p. 6 ("Allstate in no way seeks to diminish the contemptible nature of the offenses inflicted on Prosser . . . .").

criminal acts of the kidnappers, not the operation of the motor vehicle.[14] Prosser asserts that the order does not exclude consideration of the acts which caused her to jump, and that an award of punitive damages based on those acts is required because the acts were, as a matter of law, sufficiently blameworthy.

In the earlier order, this court explained that the decisions by the Alaska Supreme Court in *Shaw v. State Farm Mut. Auto. Ins. Co.*[15] and *Criterion Ins. Co. V. Velthouse*,[16] together with the Alaska court's discussion of decisions by other courts established that the availability of uninsured motorist coverage depended on the facts of each case which should be evaluated with reference to three considerations:

> 1) The extent to which the automobile is a cause of the injury–while strict proximate cause is not required, the vehicle must be an "active accessory" in causing the injury;
> 2) Whether there was an act of independent significance which breaks the causal connection between "use" of the vehicle and the injuries suffered; and
> 3) Whether the injuries arise from use of the vehicle for transportation purposes.[17]

Applying those factors, this court ruled that Prosser could recover compensatory damages for injuries sustained when she exited the vehicle, but not for those sustained prior to that event.[18]

The precise issue at hand is whether the conduct which caused Prosser to jump from a moving car falls within the uninsured motorist coverage when the criteria above are applied. The conduct which caused Prosser to jump was the abduction which culminated in a threat that she would be killed at an isolated location, Point Woronzof.

---

[14] Doc. 45 at pp. 4-6; doc. 53 at pp. 3-7.

[15] 19 P.3d 588 (Alaska 2001).

[16] 751 P.2d 1 (Alaska 1986).

[17] Doc. 29 at p. 9.

[18] *Id.* at p. 11.

The automobile was an "active accessory." Were Prosser not in the vehicle there would have been no means of taking her to Point Woronzof whose isolation would have allowed the kidnappers to end her abduction in a murder to which there would be no witnesses but the criminals themselves. The first factor favors coverage.

The criminal acts by the kidnappers were intentional, but Prosser's leap from the moving car cannot be viewed separately and in isolation from its cause. The leap was not a voluntary act. It was the product of unforeseen circumstances which rendered the leap an accident within the meaning of the Auto Policy.[19] The abduction and threat did not break the causal connection between use of the vehicle and Prosser's injuries. Rather, the abduction and threat was a necessary part of the causal connection between the use of the Yukon and her injuries. Stated another way, absent the adduction and threat, operation of the Yukon could not have caused the injuries incurred by Prosser, because she would not have leapt from the moving vehicle. The second factor favors coverage.

The punitive damages claim arises from injuries suffered from the use of the Yukon for transportation purposes. Were the vehicle not transporting Prosser to Point Woronzof, she could not have leapt from a moving car. The third factor favors coverage for the punitive damages claim.

## V.  CONCLUSION

For the reasons above, Allstate's motion at docket 43 is **DENIED**, and Prosser's motion at docket 48 is **GRANTED**.  Prosser has established liability for punitive

---

[19]Doc. 29 at pp. 6-7.

damages and may present her claim to the jury for determination of the amount of punitive damages.

DATED at Anchorage, Alaska, this 20th day of April 2007.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE